IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LUANN LUTZ, previously known as LUANN CONNORS,<br><br>       Lutz,<br><br>  v.<br><br>JOAN L. ZAUN, as Administratrix for the Estate of MICHAEL J. CONNORS, Deceased, MUNICH REINSURANCE OF AMERICA, INC. AS SPONSOR OF THE MUNICH REINSURANCE AMERICA, INC. SAVINGS PLAN 094050, and VANGUARD GROUP, INC.,<br>       Defendant. | **CIVIL ACTION**<br><br>**No. 5:11-cv-06674-LS** |

## MEMORANDUM OF LAW OF DEFENDANT, JOAN L. ZAUN, AS ADMINSTRATRIX FOR THE ESTATE OF MICHAEL J. CONNORS, IN SUPPORT OF HER MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Defendant, Joan L. Zaun, as Administratrix for the Estate of Michael J. Connors ("Zaun"), by and through her attorneys, Fox Rothschild LLP, respectfully submits this Memorandum of Law in Support of her Motion to Dismiss Plaintiff's Complaint. For the reasons set forth below, Zaun requests this Court to enter an Order dismissing Plaintiff's Complaint, with prejudice.

## I. Introduction

This declaratory judgment action is nothing more than a surreptitious attempt by Plaintiff to forum shop and to remove this dispute improperly from the Court of Common Pleas of Northampton County, Pennsylvania. Though Plaintiff cloaks her request for declaratory relief as an action requiring an interpretation of ERISA, in reality, this litigation concerns the interpretation and application of discreet Pennsylvania common law issues concerning the

enforceability of a non-QDRO property settlement agreement ("PSA") between a decedent's estate and his ex-wife.

Plaintiff has requested a federal declaration on four issues: (1) whether the portions of the PSA whereby Plaintiff disclaimed her interest in the decedent's savings plan are invalid; (2) whether the PSA is invalid under ERISA; (3) whether Plaintiff has rights in the benefits of the savings plan; and (4) whether the proceeds of the savings plan should be distributed to Plaintiff. Under the precedent of both the United States Supreme Court and this Court, the validity and enforceability of a waiver in an ERISA governed plan is a question of state law. Under this Court's precedent, questions regarding the validity and enforceability of non-QDRO PSA's can only be decided by Pennsylvania's state courts. Although issues three and four, *supra*, unquestionably implicate a question of federal law, Plaintiff's request for relief does not satisfy the "actual controversy" requirement of the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 because Zaun agrees with Plaintiff that Plaintiff has a right to be paid the benefits of the savings plan and, therefore, those funds should be immediately released by Vanguard into Plaintiff's possession. Thus, there is no actual controversy between Plaintiff and Zaun regarding the subject matter of Plaintiff's federal claims, and Zaun will stipulate and agree that the savings plan assets should be distributed to Plaintiff immediately. Accordingly, Zaun respectfully requests the Court to issue an Order directing Munich Re and Vanguard to distribute those assets immediately to Lutz, and dismissing the remainder of Lutz's requests for relief under the doctrine established by the *Kennedy* and *Hall* cases. Finally, Zaun requests the Court to award the estate the actual attorneys' fees and costs incurred in connection with this wholly unnecessary and grossly abusive federal action.

## II.   **Factual and Procedural Background**

This matter had its genesis on November 2, 1986, when Michael Connors ("Decedent") married Plaintiff, LuAnn Lutz ("Plaintiff" or "Lutz"), in the state of New Jersey. Decedent was employed by Munich Reinsurance America, Inc. ("Munich Re") and was a participant in Munich Re's Incentive Savings Plan (the "Savings Plan"). On November 6, 1992, Decedent designated Lutz, his then wife, as beneficiary of the Savings Plan. Subsequently, Decedent and Lutz moved to Northampton County, Pennsylvania. After living there for over six months, Decedent filed for divorce in the Court of Common Pleas of Northampton County, in an action docketed at 1998-C-569.

On or about January 4, 1998, Decedent and Lutz entered into the PSA,[1] which contained, *inter alia*, the following relevant provisions:

> **FIRST:  DIVORCE**
>
> Husband and Wife each knowingly and understandingly hereby waives any and all possible claims that this Agreement, is, for any reason, illegal or for any reason whatsoever of public policy, unenforceable in whole or in part. Husband and Wife each does hereby warrant, covenant and agree that he and/or she is and shall forever be estopped from asserting any illegality or unenforceability as to all or any part of this Agreement.
>
> ****
>
> **SIXTH:   PENSION   PLANS,   RETIREMENT   PLANS, DIVISION OF INTANGIBLE ASSETS**
>
> ***A. Wife hereby covenants and agrees to waive any and all rights or claims she may have to any intangible assets now in possession of Husband or titled in Husband's name, including, but not limited to*** savings accounts, checking accounts, 401k Plans, pension plans (IRA'S) Individual Retirement Accounts, ***retirement savings plans*** or health plans of any kind.

---

[1] Throughout the PSA, Decedent is referred to as "Husband", and Lutz is referred to as "Wife".

B.  Husband hereby hereby covenants and agrees to waive any and all rights or claims he may have to any intangible assets now in possession of Wife or titled in Wife's name, including, but not limited to savings accounts, checking accounts, 401K Plans, pension plans (IRA'S) Individual Retirement Accounts, retirement savings plans or health plans of any kind.

\*\*\*\*

## TWELFTH:  MUTUAL RELEASE AND DISCHARGE OF CLAIMS IN ESTATES

Each party hereby releases, waives and relinquishes any and all rights which he or she may now have, or may hereafter have, as the other party's spouse under the present or furure laws of any jurisdiction (a) to share in the estate of the other party upon the latter's death; and (b) to act as executor or administrator of the party's estate.  This provision is intended to, and shall constitute a mutual waiver by the parties to take against each other's Wills now or hereafter in force, under the present or future laws of any jurisdiction whatsoever.

The consideration for each party's waiver and release is the other party's reciprocal waiver and release.  The parties intend by the aforedescribed waiver and release to relinquish *any and all rights in and to each other's estate*, including the rights of set-off, any and all distributive shares and all rights of elections presently *provided for in any statute of this or any other jurisdiction*.

\*\*\*\*

## EIGHTEENTH:  FULL AND FAIR DISCLOSURE

The parties hereto respectfully acknowledge that this Agreement has been fully and completely explained as to the facts and the applicable law relating to the subject matter of this Agreement. The parties further acknowledge that they have given careful and mature thought prior to the signing and, having carefully read each provision herein, entered into this Agreement freely and voluntarily.  Each party represents that they have made full and fair disclosure of all relevant facts to each other prior to the execution of this Agreement.

\*\*\*\*

## TWENTIETH: ENFORCEMENT EXPENSES

> If either Husband or Wife defaults in the performance of any of the terms, provisions or obligations herein set forth, and it becomes necessary to institute legal proceedings to effectuate the performance of any provisions of this Agreement, then the party found to be in default shall pay the expenses of the other party, including the other party's reasonable attorney's fees, incurred in connection with such enforcement proceedings.

(emphasis added).  Attached hereto as Exhibit "A" is a true and correct copy of the PSA. Subsequently, on January 11, 1999, the Northampton court entered a decree (the "Divorce Decree") ordering that Decedent and Lutz were divorced from the bonds of matrimony. Attached hereto as Exhibit "B" is a true and correct copy of the Divorce Decree.  The Divorce Decree expressly incorporated, but did not merge, the PSA.  Twelve years later, on February 28, 2011, Decedent died, never having changed the beneficiary designation for the Savings Plan in accordance with the terms of the plan documents.  Attached hereto as Exhibit "C" is a true and correct copy of the relevant beneficiary designation for the Savings Plan.

On April 1, 2011, Zaun was appointed as Administratrix of Decedent's Estate.  Attached hereto as Exhibit "D" is the relevant Certificate of Grant of Letters of Administration.  Shortly thereafter, on April 25, 2011, Zaun filed a Petition for Special Relief in the Court of Common Pleas of Northampton County requesting that: (1) "any and all monies received by LuAnn Lutz from the Savings Plan be immediately deposited into an interest bearing escrow account to be created by the parties hereto; (2) that LuAnn Lutz must fully and timely cooperate with the transfer of any and all monies received from the Savings Plan into the escrow account; and (3) that LuAnn Lutz must refrain from using, diminishing, depleting, spending, assigning, and/or otherwise transferring any and all monies received from the Savings Plan, except to the extent such monies may be transferred into the escrow account."  Attached hereto as Exhibit "E" is a true and correct copy of the Petition for Special Relief without accompanying Exhibits and the Proposed Order accompanying same.  As is evidenced by the relief requested in the Petition for

Special Relief filed by Zaun in the Court of Common Pleas of Northampton County, Zaun has acknowledged Lutz's right to be *paid* the monies from the Savings Plan by Vanguard from the beginning of this now increasingly protracted litigation. *See* Exhibit "E". However, as is set forth herein below, Zaun rightfully challenges Lutz's right to retain such monies once they are received. *Id.*

Prior to filing the Petition for Special Relief, counsel for Zaun contacted counsel for Lutz to see if Lutz would be willing to escrow any monies received from Vanguard. On or about April 23, 2011, two days prior to filing the of the Petition for Special Relief, Attorney Pfeiffer indicated that it was preferable that Vanguard be permitted to retain the monies from the Savings Plan, rather than pay them out to Lutz, and that such monies simply be transferred into a money market option until such time as the parties could litigate their rights to such monies before the Northampton Court.

On or about April 28, 2011-- the date that the Petition for Special Relief was presented in Motion's Court in Northampton County--Zaun and Lutz entered into an agreement allowing Vanguard to retain the monies from the Savings Plan so that the parties could litigate their rights to such monies before the Northampton Court. That day, the Northampton Court memorialized this agreement by way of a Consent Order. Attached hereto as Exhibit "F" is a true and correct copy of the Consent Order. The Consent Order provided that Munich Re and Vanguard "are hereby prohibited from disbursing any amounts from the Plan to LUANN LUTZ, formerly, LUANN CONNORS, in connection with the Plan account balance of Michael J. Connors, deceased, or any interest in the Plan held by Michael J. Connors, deceased, until receiving further Order from this Court." *Id.* It is from this agreed upon Order that Lutz's federal cause of action springs; however, as detailed *infra*, Zaun has admitted from the inception of this litigation that Lutz has a right to be paid the monies from the Savings Plan and, once this federal

action was filed, specifically asked the Northampton Court to order Munich Re and/or Vanguard to immediately distribute the proceeds of the Savings Plan to Lutz, which request was opposed by Lutz.

On or about June 22, 2011, Zaun filed a Petition to Enforce Property Settlement Agreement and Divorce Decree in the Northampton Court, wherein Zaun requested the Northampton Court to enter an Order directing that any and all monies from the Savings Plan be declared the sole property of Decedent's estate in accordance with the PSA, and declaring that Lutz has no legal right, tile or ownership in the Savings Plan and/or monies from the Savings Plan. Attached hereto as Exhibit "G" is a true and correct copy of the Petition to Enforce the Property Settlement Agreement and Divorce Decree. This request for relief was based upon Lutz's prior agreement to litigate the parties' rights to the monies from the Savings Plan in the Northampton Court.

Subsequently, on or about October 13, 2011, Zaun filed an Amended Petition to Enforce Property Settlement Agreement and Divorce Decree, seeking the following relief in addition to that requested in the initial Petition: (1) an Order directing Lutz to pay all enforcement expenses, including Zaun's attorney's fees, incurred in connection with the Northampton court proceedings; and (2) an Order directing that any and all monies from the Savings Plan be immediately released directly to Zaun.

Thereafter, on or about October 28, 2011, Zaun once again amended her request for relief to ask for an Order: (1) declaring any and all monies from the Savings Plan be declared the sole property of Decedent's Estate in accordance with the PSA and Divorce Decree; (2) declaring Lutz to have no legal right, title, and/or ownership in the Saving Plan and/or any and all monies from the Savings Plan; (3) ordering that any monies paid out from the Savings Plan *to Lutz* be paid over to Zaun; and (4) ordering Lutz to pay all enforcement expenses. Attached hereto as

7

Exhibit "H" is a true and correct copy of the most recent Proposed Order accompanying the Petition to Enforce the Property Settlement Agreement and Divorce Decree. This amendment to Zaun's requested relief, again clarified that Zaun did not dispute Lutz's right to be *paid* the monies from the Savings Plan.

Most recently, after this federal action was filed and after Lutz filed a Motion to Stay the state court action pending with the Northampton County Court, Zaun filed a Motion to Rescind the Consent Order Dated April 28, 2011 with the Northampton County Court. Attached hereto as Exhibit "I" is a true and correct copy of the Motion to Rescind the Consent Order Dated April 28, 2011. Consistent with Zaun's position set forth in her most recent amended request for relief relating to the Petition to Enforce the PSA and/or Divorce Decree, Zaun had requested that the April 28, 2011 Consent Order, memorializing the parties' prior agreement that the monies contained in the Savings Plan be held by Vanguard in a money market option pending disposition of the Northampton County Court case, be rescinded and that all monies currently in the Savings Plan be distributed immediately to Lutz. To avoid dissipation of the Savings Plan assets pending resolution of this dispute, Zaun had simply requested an Order from Northampton Court enjoining Lutz from doing so following her receipt of those funds. See Exhibit "I". Due to the pendency of this federal action, the Northampton County Court, denied Zaun's Motion and stayed all state court proceedings pending this Court's disposition of the instant case.

As stated previously above, Lutz initially agreed to the April 28, 2011 Consent Order and agreed that the plan assets should be held in a money market option with Vanguard, the plan administrator, pending resolution of the state court action pending before the Northampton Court. Lutz did not change her position on this plan of action until October 25, 2011, when she filed the instant Complaint, seeking to remove the matter out of the Northampton Court.

8

In her federal Complaint, Lutz argues that the PSA is ineffective under ERISA because it does not satisfy the ERISA criteria of written spousal consent to waive spousal rights to benefits or that of a Qualified Domestic Relations Order ("QDRO").  Lutz requests this Court to enter a declaratory judgment in her favor under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, declaring: (1) that the PSA is void to the extent that it represents a purported waiver of Lutz's beneficiary rights in the Savings Plan; (2) that the PSA is invalid for failure to meet the criteria set forth in ERISA; (3) what rights Lutz has in the benefits of the Savings Plan; (4) that Vanguard and Munich Re be required to distribute the funds contained in the Savings Plan to Lutz; and (5) that Zaun be required to pay Lutz's attorney's fees and costs of suit.

Lutz appears to request a wide range of relief in her Complaint; however, upon a closer inspection, it becomes evident that Lutz's request for declaratory relief is founded *solely* on a question of federal law that is not disputed by Zaun.  Although Lutz specifically asks this Court to order distribution of the Savings Plan assets to her, she has repeatedly rejected all offers to have those monies funds immediately distributed to her.  For purposes of this case, Zaun continues to not dispute Lutz's position that the monies should be paid to her by Vanguard. Thus, Zaun asks this Court to issue a declaratory ruling that under ERISA and the *Kennedy* doctrine, the proceeds from the Savings Plan should be immediately distributed to Lutz.

However, it is readily apparent that the remaining issues raised by Lutz arise under Pennsylvania state law, and that this case must be determined by the Northampton Court, where this litigation first arose and where Lutz agreed that the dispute should be litigated approximately six months ago.  Accordingly, Zaun also requests this Court to dismiss the remainder of Lutz's federal Complaint insofar as it requests a federal declaration on the enforceability or validity of the PSA and/or Divorce Decree as these are matters that this Court's  precedent has  established as being  properly adjudicated by a Pennsylvania state court. *See Hall v. Hall, infra.*

9

### III.   Argument

#### A.   Standard of Review

A motion to dismiss a federal complaint that fails to state a claim for relief under the Federal Declaratory Judgment Act for want of a substantial federal question is properly raised under Rules 12(b)(1) and 12(b)(6). *Zimmerman v. HBO Affiliate Group*, 834 F.2d 1163, 1164 (3d Cir. 1987). Where the requested declaratory relief does not present an actual controversy; or will not serve a useful purpose; and the Complaint does not seek adjudication of a federal question of law, ancillary state law claims are properly dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). *Id.* at 1170-1171.

"A pleading that states a claim for relief must contain. . . a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2).  That requirement is meant to provide the opposing party with "'fair notice of what the. . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 42, 47 (1957)).  "A Rule 12(b)(6) motion should be granted only if it appears *to a certainty* that no relief could be granted under any set of facts that *could* be proved." *Straughter-Carter v. Wachovia Bank, N.A.*, 2009 WL 1140124 at *2 (E.D.Pa. 2009) (citing *Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 188 (3d Cir. 2005)) (emphasis added).

"While a [pleading] attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, [the complaining party's] obligation to provide the 'grounds' of his 'entitle[ment]' to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (2007) (citations omitted).  "Factual allegations must be enough to raise a right to relief above a speculative level, on the assumption that all the allegations in the [pleading] are true. . . ." *Id.* at 555-56 (citations

omitted). "To survive a motion to dismiss, a [pleading] must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570)). "Facial plausibility" merely requires the complaining party to include sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In a Rule 12(b)(6) motion to dismiss for failure to state a claim, the moving party bears the burden of showing that the non-moving party has not properly stated its claim. *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). When considering Zaun's motion under Rule 12(b)(6), this Court must accept the factual allegations contained in Lutz's Complaint as true, construe them in the light most favorable to Lutz, and determine whether, under any reasonable reading of the Complaint, Lutz may be entitled to relief. *Id.* at 233. As the Third Circuit noted in *Phillips*, the *Twombly* formulation of the Rule 12(b)(6) pleading standard "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Id.* at 234 (quoting *Twombly*, 550 U.S. at 556).

Rule 12(d) provides:

> If, on a motion under Rule 12(b)(6)..., matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment. All parties must be given reasonable opportunity to present all the material that is pertinent to the motion.

Fed. R. Civ. P. 12(d). To demonstrate that Plaintiff has used this suit as a means to improperly remove this case from Northampton County Court, it is necessary for Zaun to discuss matters outside the pleadings and to attach the relevant Northampton pleadings, motions and orders to this memorandum. Therefore, to the extent that the Court deems it necessary to consider this a motion for summary judgment, it may do so pursuant to Rule 12(d). Pursuant to Federal Rule of

11

Civil Procedure 56(b), a party against whom a claim is asserted may at any time move for summary judgment as to all or any part of the claims.   Summary judgment should be granted if there are no genuine issues of material fact in dispute and the movant is entitled to judgment as a matter of law. *Seitzinger v. The Reading Hosp. and Med. Ctr.*, No. Civ. A. 95-5926, 1997 WL 476339, at *3 (E.D. Pa. Aug. 19, 1997).

Although the Complaint does not specify the statute under which Lutz claims this Court possesses subject matter jurisdiction, it is evident that Lutz seeks to bring this Federal Declaratory Judgment claim under federal question jurisdiction pursuant to 28 U.S.C. § 1331. Lutz asserts that her declaratory judgment claim requires an interpretation of ERISA, 29 U.S.C. 1132(a)(3)(B)(ii) and § 1132(e).   However, as discussed at length *infra*, Lutz has failed to demonstrate that a true conflict exists regarding Lutz's right to *receive* the proceeds of the Savings Plan, and, therefore, fails to satisfy the Declaratory Judgment Act's "actual controversy" requirement.  Because Lutz has failed to state a claim upon which relief may be granted under the Federal Declaratory Judgment Act, this Court does not have subject matter jurisdiction over this suit, which must be decided by the Northampton Court, as the parties had previously agreed, until Lutz, after discovering the non-meritorious nature of her state court arguments, suddenly decided to change her mind and forum shop the case to this Court.   Moreover, the Federal Declaratory Judgment Act alone is insufficient to confer federal question jurisdiction on the Court. *See Correspondent Services Corp. v. First Equities Corp.*, 442 F.3d 767 (2d Cir. 2006) (Federal Declaratory Judgment Act does not confer independent basis for subject matter jurisdiction); and *Rector v. Denver*, 348 F.3d 935, 947 (10th Cir. 2003) (same).   Both Lutz and Zaun agree that under prevailing law, Munich Re and Vanguard are required to distribute the monies from the Saving Plan to Lutz as Decedent's designated beneficiary.   The remaining claims for relief stated by Lutz sound in Pennsylvania state divorce and contract law, which must

be  decided by the Northampton Court, where Zaun first filed suit.  Once this Court either dismisses Plaintiff's Complaint for failure to state a claim, or, alternatively, enters summary judgment ordering Vanguard and Munich Re to distribute the funds to Plaintiff, as requested by Plaintiff and as stipulated by Zaun, the only federal question potentially at issue will be resolved. At that point, the Court should properly refuse jurisdiction over Plaintiff's state law claims and return this litigation to the Northampton Court.

**B.      Plaintiff Fails to State a Claim Under Federal Declaratory Judgment Act Because There Is No Actual Controversy Between Plaintiff and Zaun Regarding Plaintiff's Rights Under ERISA**

The Federal Declaratory Judgment Act, 28 U.S.C.S. § 2201, *et seq.*, provides, in pertinent part:

> In a case of actual controversy within its jurisdiction,… any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.  Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

*Id.*  "The decision to grant or withhold a declaratory judgment is committed to the discretion of the district court." *Zimmerman*, 834 F.2d at 1170.  "Both the Supreme Court and the Federal Circuit have emphasized recently that the Act is an *enabling act* that provides the court with the power, rather than the obligation, to grant relief." *National Foam, Inc. v. Williams Fire & Hazard Control, Inc.*, 1997 WL 700496 at *3 (E.D.Pa. 1997).  "Generally, federal courts should refuse to exercise their discretion to hear declaratory judgment actions turning solely on state law." *Evanston Ins. Co. v. Layne Thomas Builders, Inc.*, 635 F.Supp.2d 348, 354 (D.Del. 2009) (citing *State Auto Ins. Cos. v. Summy*, 234 F.3d 131, 136 (3d Cir. 2001)).

"The Declaratory Judgments Act sets as a prerequisite to declaratory relief that a case of actual controversy exist between the parties." *Korvettes, Inc. v. Brous*, 617 F.2d 1021, 1023 (3d

13

Cir. 1980). "[L]itigants will not satisfy the actual controversy requirement when their dispute becomes moot prior to judicial resolution." *Id.* at 1023-1024. Therefore, where the defendant in a declaratory judgment action consents to the resolution requested by the plaintiff, the declaratory judgment action will be deemed moot, and, thus, a nullity. *Id.*

In *Kennedy v. Plan Administrator for DuPont Savings and Investment Plan*, 555 U.S. 285, 129 S.Ct. 865, the Supreme Court explicitly held that when a participant in an ERISA-governed plan dies, the plan administrator is required under ERISA to distribute the assets contained in that plan to the beneficiary named by the deceased plan participant in accordance with the plan documents or a Qualified Domestic Relations Order ("QDRO"). *Id.* at 300, 129 S.Ct. at 875. As in this case, the ex-spouse in *Kennedy* waived her right to the decedent's plan benefits through a non-QDRO divorce decree and the decedent failed to change the beneficiary through the plan administrator prior to dying. *Id.* at 290, 129 S.Ct. at 869. Rather than sue the plan beneficiary, as Zaun did in her first-filed suit in Northampton court, the plaintiff estate in *Kennedy* chose to sue the plan administrator that the plaintiff argued had improperly distributed funds to the ex-spouse beneficiary named in plan documents. *Id.*

Although the Supreme Court granted certiorari "to resolve a split among the Court of Appeals and State Supreme Courts over a divorced spouse's ability to waive pension plan benefits through a divorce decree not amounting to a QDRO," the Court later realized that *Kennedy* implicated questions regarding a plan administrator's obligations when a waiver of rights in plan assets by a beneficiary does not comply with plan documents. *Id.* at 291, 129 S.Ct. at 870. Accordingly, the Court chose not to rule on the very issue for which it had granted certiorari, and explicitly stated it was not expressing "any view as to whether the Estate could have brought an action in state or federal court against [the ex-spouse who had waived her right to plan assets] to obtain benefits after they were distributed." *Id.* at 875, n.10, 129 S.Ct. at 300,

n.10.  Instead, the Court addressed two issues: (1) whether ERISA-preempted a common law waiver of beneficiary's rights; and (2) whether the plan administrator had properly distributed the assets to the named beneficiary who had waived those rights through a non-QDRO divorce decree.  Ultimately, the Court held that a common law "waiver is not rendered invalid by the text of the [ERISA] antialienation provision, but that the plan administrator properly disregarded the waiver owing to its conflict with the designation made by the former husband in accordance with plan documents." *Id.* at 288, 129 S.Ct. at 868.  The Supreme Court concentrated on the practical reality that "[p]lan administrators would be forced to examine a multitude of external documents that might purport to affect the dispensation of benefits, and be drawn into litigation like this over the meaning and enforceability of purported waivers" if they were forced to litigate conflicts between estates and designated beneficiaries.[2] *Id.* at 301, 129 S.Ct. at 876.  The Court determined that this expedient measure of distributing plan assets furthered "the congressional goal of minimizing the administrative and financial burdens on plan administrators," but stated that it may be possible for an estate to reclaim those funds through a state law cause of action once those assets had been properly distributed. *Id.* at 303, 129 S.Ct. at 877; *Id.* at 875, n.10, 129 S.Ct. at 300, n.10.

In so ruling, the Court directly cited two cases holding that, once the benefits are distributed by the plan administrator, they are no longer entitled to ERISA protection. *Sweebe v. Sweebe*, 474 Mich. 151, 712 N.S.2d 708 (2006); *Pardee v. Pardee*, 112 P.3d 308 (2004).  In the Michigan case, *Sweebe*, the court noted that a plan administrator must pay benefits to the named beneficiary as required by ERISA but, after the benefits are distributed, the terms of the parties' agreement may prevent the named beneficiary from retaining those proceeds. *Swebe*, 474 Mich. at 157-158, 712 N.S.2d at 713.  The Oklahoma court in *Pardee* found that ERISA did not

---

[2] Under the black letter law established in *Kennedy*, Vanguard, as plan administrator, is an improper party to this

preempt enforcement of an allocation of ERISA benefits provided for in the state court divorce decree as the funds were no longer entitled to ERISA protection once they were distributed. *Pardee*, 112 P.3d at 315-316. Both of those cases distinguished an earlier case, *Boggs v. Boggs*, 520 U.S. 833, 117 S.Ct. 1754 (1997), .

By holding that a common law waiver is *not* preempted by federal ERISA law, the United States Supreme Court has already intrinsically decided that once a plan administrator of an ERISA plan has distributed proceeds to the plan's designated beneficiary, another party may attempt to enforce a prior waiver by such plan beneficiary of the right to retain such proceeds. *Id.* at 297. However, the Supreme Court could not enter a binding rule on this issue in *Kennedy*, because it cannot issue any advisory opinions.

The *Kennedy* decision established a bright line rule that Zaun does not contest: Munich Re and/or Vanguard *must* distribute the assets of the Savings Plan to Lutz in accordance with the plan documents. Lutz has asked this Court to issue a declaratory judgment on an issue of well-settled law established by the Supreme Court in *Kennedy*. However, there is no actual controversy regarding that federal question. Zaun and Plaintiff both agree that Vanguard and Munich Re should distribute those assets to Plaintiff. Amazingly, Plaintiff has refused Zaun's willingness to stipulate to that issue solely to keep the illusion of a federal question alive. Simply stated, the assets in the Savings Plan should be immediately distributed to Plaintiff under *Kennedy* because Plaintiff is the designated beneficiary of the Savings Plan.

In the aftermath of *Kennedy*, federal courts within the Third Circuit have expressed varying opinions as to whether ERISA forecloses an estate's ability to successfully bring state law claims against the named beneficiary of an ERISA-governed plan when that beneficiary waived her right to her ex-spouse's plan assets. The Third Circuit itself has not ruled on this suit.

issue and the Supreme Court has not granted certiorari to another case for the reasons that it initially granted certiorari in *Kennedy*.  However, in *Hall v. Hall*, 2009 WL 2837720 (E.D.Pa. 2009), this Court ruled on that issue and determined that the enforceability or unenforceability of a non-QDRO divorce waiver was a matter of state law to be determined by the state courts of Pennsylvania.  *Id.* at *3.  In *Hall*, the decedent and his ex-wife entered into a "Marital Settlement Agreement" whereby it was agreed that the beneficiary of the decedent's account would be changed via a QDRO that was ultimately never filed.  *Id.* at *1.  Following the decedent's death, the plan administrator distributed the plan assets to the ex-wife, who was then sued by the decedent's estate in the Bucks County Court of Common Pleas.  *Id.*  The ex-wife sought to remove the suit to the Eastern District of Pennsylvania, but this Court remanded the case back to Bucks County due to lack of federal question jurisdiction.  *Id.* at *2.  After implicitly relying on *Kennedy's* holding that a common law waiver, such as one contained within a PSA and/or Divorce Decree, is not preempted by the ERISA statute so long as the waiver makes no attempt to force the plan administrator to pay the plan proceeds directly to anyone other than the designated beneficiary, the *Hall* Court noted that *Kennedy* left open the question of whether a lawsuit, such as the instant one between an Estate and the decedent's ex-spouse to obtain plan benefits after they were distributed, should be decided in state or federal court.  *Id.*

In deciding this issue, this Court held that "*[t]his claim does not raise any federal issues [under ERISA], but merely involves a contract dispute between the parties.  This dispute is more appropriately a matter to be decided in state court, specifically, the Family Division of the Court of Common Pleas of Bucks County.*"  *Id.* (emphasis added).  The Court determined that once the funds had been distributed from the ERISA-governed plan, the matter no longer arose under ERISA and was a matter of state law and that a "Pennsylvania state court [was] the *only* forum in which to litigate" such a dispute.  *Id.* (emphasis added).  An action regarding the

enforcement and applicability of an agreement such as the PSA "does not raise any federal issues, but merely involves a contract dispute between the parties... more appropriately a mater to be decided in state court, specifically, the Family Division of the Court of Common Pleas..." *Id.* at 3. Therefore, once the assets contained in the Savings Plan are released to Lutz, as they must be under *Kennedy*, *no* federal question or issue will remain.

Plaintiff's Complaint fails to satisfy the "actual controversy" requirement of the Declaratory Judgment Act. Even though Zaun has agreed that the Savings Plan assets should and must be distributed to Plaintiff, Plaintiff opposed such distribution because she was well aware that under the law of this jurisdiction, the distribution of funds from an ERISA plan destroys federal question jurisdiction under the Declaratory Judgment Act because the Declaratory Judgment Act cannot form the basis for such jurisdiction alone. If ERISA is no longer implicated, which it is not due to the lack of an actual controversy between the parties regarding ERISA's requirements, then there is no federal question for this Court to decide. Instead, the only questions that remain concern the interpretation and application of a Pennsylvania divorce decree and property settlement agreement. Accordingly, Zaun respectfully requests this Court to grant her motion, as well as the federal portion of Plaintiff's request, by ordering the immediate distribution of funds from the Savings Plan to Lutz, and then to dismiss the remainder of Plaintiff's claims, so that the Northampton court can proceed on Zaun's action, as the Northampton court is "the *only* forum in which to litigate" the enforceability of Plaintiff's waiver.

### C. This Court Has Broad Discretion to Dismiss Plaintiff's Claims as Improper Forum Shopping

"[D]istrict courts have the discretion to dismiss a declaratory judgment action where it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory

judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties." *NYLife Distributors, Inc. v. Adherence Group, Inc.*, 72 F.3d 371, 376 (3d Cir. 1995) (quoting *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 495, 62 S.Ct. 1173, 1175-1176 (1942)). "In declaratory judgment actions, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *Perelman v. Perelman*, 688 F.Supp.2d 367, 373 (E.D.Pa. 2010) (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286, 115 S.Ct. 2137 (1995)). When determining whether to stay or dismiss a federal declaratory judgment action when a state court proceeding is pending, the Court must determine: (1) whether the controversy may be better settled in state court; (2) whether a federal court declaration will resolve the uncertainty of the obligation that gave rise to the controversy; (3) the convenience of the parties; (4) the public interest in settlement of the uncertainty of the obligation; and (4) the availability and relative convenience of other remedies. *U.S. v. Commw. of PA, Dept. of Environmental Resources*, 923 F.2d 1071, 1075 (3d Cir. 1991). The Court may properly dismiss a Complaint for declaratory relief where it is evident that the federal suit was "motivated solely by considerations of forum shopping." *Nat'l Foam, Inc.*, 1997 WL 700496 at *7. "Gratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided." *Nat. Fire Ins. Co. of Hartford v. Keystone Fruit Mktg., Inc.*, 2011 WL 3739138 at *4 (M.D.Pa. 2011) (quoting *State Auto Ins. Cos. v. Summy*, 234 F.3d 131 (3d Cir. 2000)). Simply stated, "the Declaratory Judgment Act was not intended to enable a party to obtain a change of tribunal from a state court to federal court," which is exactly what Plaintiff has attempted to do here. FEDERAL PRACTICE AND PROCEDURE § 2758, Wright, Miller & Kane; *see also, e.g., Shell Oil Co. v. Frusetta*, 290 F.2d 689, 692 (9th Cir. 1961); *H.J. Heinz Co. v. Owens*, 189 F.2d 505, 508 (9th Cir. 1951); *Gates Constr. Corp. v. Koschak*, 792 F.Supp. 334, 337 (D.C.N.Y. 1992). Indeed, the kind of forum

shopping that has occurred in this litigation "subverts the policies of the Declaratory Judgment Act." *Wilderman, D.D.S. v. Cooper & Scully, P.C.*, 428 F.3d 474, 476, n.1 (3d Cir. 2005) (citing *Nat'l Foam*, 1997 WL 700496 at *7.)

It is unquestionable that Zaun initiated litigation in the Northampton Court prior to the filing of this action by Plaintiff.  Indeed, shortly after Zaun first filed suit in Northampton County, Plaintiff consented to the jurisdiction of the Northampton Court and agreed that this dispute should be decided by the Northampton Court.  Nearly six months later, believing that she had found a potential strategic advantage to having this case decided in federal court based upon her reading of a few inapposite cases decided by the U.S. District Court for New Jersey and after her state court arguments were not bearing any fruit, Plaintiff filed suit here.  However, the mere pendency of Zaun's suit does not automatically foreclose upon this Court's ability to hear this case.  The Court must also consider, *inter alia*, whether the Northampton court may more readily resolve the parties' dispute regarding the enforceability of the PSA, whether the Northampton court is more convenient for the parties, whether a declaration by this Court will adequately resolve the dispute, and whether under this Court's precedent in *Hall*, the Northampton court is the "only forum" that is suited to make that determination.  Therefore, the Northampton Court's family division, where Zaun's suit regarding the Estate's rights under the PSA is currently pending, should be permitted to decide that issue.  The Northampton Court is a convenient forum for the parties to obtain a ruling on the interpretation of the PSA.  Six months ago, the parties explicitly agreed that Northampton court was the proper court to rule on this issue.   As this Court has stated, it is the "only forum."

This Court should not reward Plaintiff for engaging in vexatious forum shopping. Accordingly, Zaun asks this Court to enter an Order directing Vanguard and Munich Re to immediately disburse the Savings Plan assets to Plaintiff, and dismissing Plaintiff's requests for

declaratory relief regarding the enforceability of the PSA.   The latter issues concern discreet questions of Pennsylvania state family law, which are more properly decided by the Northampton court's family law division, where Zaun's first-filed suit is currently stayed pending this Court's disposition of the instant litigation.   In addition, Zaun requests that the Court enter an Order awarding Zaun the attorneys' fees that the estate has been forced to expend in defense of this suit.

## IV.   Conclusion

For the foregoing reasons, Zaun requests this Court to enter an Order directing Vanguard and Munich Re to distribute the Savings Plan assets pursuant to the plan documents, and dismissing Lutz's Complaint and request for declaratory relief, with prejudice.

**FOX ROTHSCHILD LLP**

_____/s/ Brian E. Subers_____
Brian E. Subers, Esquire (PA ID 44658)
Jason Vishio, Esquire (PA ID 94102)
W. Christian Moffitt, Esquire (PA ID 206770)
10 Sentry Parkway, Suite 200
P.O. Box 3001
Blue Bell, PA 19422
(610) 397-6500
(610) 397-0450 (facsimile)
bsubers@foxrothschild.com
jvishio@foxrothschild.com
Dated: January 3, 2012        cmoffitt@foxrothschild.com